IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cr-00075 (GBL) |
| | ) | |
| HENRI SAINT-SURIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Henri Saint-Surin's appeal under Federal Rule of Criminal Procedure 58(g)(2). This case concerns Defendant's challenge to his conviction for driving under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(1).

The issue before the Court is whether, in viewing the evidence in a light most favorable to the Government, the evidence was sufficient for a reasonable fact-finder to find Defendant guilty of a driving under the influence ("DUI") offense. The Court finds that there was sufficient evidence to support a reasonable fact-finder's conclusion that Defendant was operating a motor vehicle under the influence of alcohol to a degree that rendered Defendant incapable of safe operation. Therefore, the Court affirms the Magistrate Judge's decision to convict Defendant of the DUI offense.

## I. BACKGROUND

### A. Factual Background

The following background information is based on the evidence adduced during the bench trial held by United States Magistrate Judge T. Rawles Jones, Jr. The evidence consisted of testimony from three witnesses and two documents. The Government called the two arresting officers from the United States Park Police to testify—Officer Steven Ochocki and Officer

Marfak Campbell. The Government also introduced as evidence a printout of the test results from an Intoximeter EC/IR II test and an instrument certification for the Intoximeter device. Defense counsel called one witness, Ksemiya Tsoi, who is Defendant's friend and was present at the time of Defendant's arrest.

The evidence adduced at trial showed that in January 2016, Defendant traveled from New York to the Washington, D.C. metropolitan area. Defendant lodged at a hotel. Officer Ochocki's testimony indicates that Defendant admitted to having two servings of rum and coke when Defendant was at his hotel.

On or about Saturday, January 14, 2017, at approximately 9:30 p.m., Defendant, Ms. Tsoi, and a third person met at Cuba Libre Restaurant and Rum Bar in Washington, D.C. ("Cuba Libre"). It is a lounge where patrons salsa dance. Ms. Tsoi testified that she and Defendant danced most of the night, and that she did not see Defendant consume any alcohol. However, Ms. Tsoi testified that she was not with Defendant the entire night because, at the very least, she "would go to the bathroom sometimes." Ms. Tsoi testified that she could not be sure whether Defendant ordered alcoholic drinks when he was outside of her presence. Ms. Tsoi further testified that she drank three alcoholic drinks while at Cuba Libre, and the third person—Ms. Tsoi's friend who was visiting from Dallas—also drank alcoholic drinks that night.

Defendant, Ms. Tsoi, and Ms. Tsoi's friend left Cuba Libre at approximately 3 a.m., when the lounge closed. The three individuals traveled in Defendant's white Mazda 6 sedan ("Vehicle") to get pizza at a restaurant a few blocks away. Because Ms. Tsoi and her friend intended to stay at Ms. Tsoi's home in Bethesda, Defendant offered to give them a ride home. Ms. Tsoi testified that Defendant was unfamiliar with the route to her home and used GPS on his cellphone to navigate.

On the morning of January 15, 2017, Officer Ochocki and his partner, Officer Gregory Harper, patrolled the George Washington Memorial Parkway ("GW Parkway"), which falls within federally owned lands administered by the National Park Service.

At approximately 4:30 a.m., while patrolling the GW Parkway near Glebe Road, Officer Ochocki observed the Vehicle straddling the middle lane. Officer Ochocki testified that while following the Vehicle, he observed Defendant commit a total of seven lane violations.

Officer Ochocki conducted a traffic stop near Route 123. Defendant was in the driver's seat, Ms. Tsoi was in the front-passenger seat, and the third person was in the backseat. Officer Ochocki testified that when he approached the Vehicle and Defendant rolled down the window, Officer Ochocki smelled the odor of alcohol coming from Defendant and observed that Defendant had "glassy, watery eyes." Officer Ochocki further testified that even after Defendant exited the Vehicle, the odor of alcohol emanated from Defendant—as opposed to one of the other Vehicle occupants.

Officer Ochocki proceeded to administer the following three field sobriety tests. Officer Ochocki administered the walk-and-turn test, a test that required Defendant to take several heel-to-toe steps. Defendant did not exhibit any of the eight "clues" related to that test. Officer Ochocki also administered the one-leg stand test, a test that required Defendant to stand on one foot and count aloud. Defendant did not exhibit any of the four clues related to that test. Additionally, Officer Ochocki administered the horizontal gaze nystagmus ("HGN") test, a test to determine whether the eye involuntarily jerks. Officer Ochocki observed "six of six clues," which served as indicators to him that Defendant was under the influence of alcohol. Officer Ochocki testified that he had been trained to look for nystagmus, but he was unable to determine whether factors other than alcohol—for example, coffee or a medical condition—caused

Defendant's involuntary eye movements. However, prior to performing the field sobriety tests, Officer Ochocki asked Defendant if he had any medical conditions, and Defendant said he did not.

After Officers Ochocki and Harper had already conducted the traffic stop, Officer Campbell arrived at the scene in a separate police vehicle. With Defendant's consent, Officer Campbell administered a roadside breath test ("RBT test"), which required Defendant to blow into a tube. Officer Campbell testified that Defendant blew a .09 on the RBT test, which tested positive for ethanol. Both officers testified that they believed Defendant was intoxicated.

After completing the RBT test, Officers Ochocki and Campbell placed Defendant under arrest and took him to the Park Police station for processing. At the station, Officer Campbell administered an Intoximeter test to determine Defendant's blood alcohol concentration ("BAC") level. The procedure began with a twenty-minute observation period during which time Defendant was instructed to not put anything in his mouth, not cough, and not do anything that would be bring up residual mouth alcohol. Just before the first twenty-minute period expired, Defendant coughed. Officer Campbell then observed Defendant for an additional twenty-minute period. After the second twenty-minute observation period, Officer Campbell administered an Intoximeter test. The record reflects that the Intoximeter test produced results from two breath samples. At 6:13 a.m. Defendant blew .081 grams per 210 liters of breath, and at 6:18 a.m. Defendant blew .072 grams per 210 liters of breath. The Intoximeter test produced these results approximately 1 hour and 43 minutes after the traffic stop occurred at 4:30 a.m.

## B. Procedural Background

On January 15, 2017, Defendant was charged with three offenses: (1) driving under the influence ("DUI") in violation of 36 C.F.R. § 4.23(a)(1); (2) driving while intoxicated ("DWI")

in violation of 36 C.F.R. § 4.23(a)(2); and (3) failure to stay in one lane in violation of 36 C.F.R. § 4.2.

Two weeks prior to the bench trial, Defendant filed a motion to suppress based on the ground that the police officers lacked probable cause to make the arrest. On March 16, 2017, the Magistrate Judge held a motion to suppress hearing and a bench trial.

In response to the motion to suppress, the Government relied on evidence of the lane violations, Defendant's smell, Defendant's glassy eyes, the results of the HGN test, and the results of the RBT test. When orally ruling on Defendant's motion to suppress, the Magistrate Judge stated that he gave "scant weight" to the RBT test under the circumstances of this case. The Magistrate Judge found that Defendant's driving behavior, odor of alcohol, and glassy eyes were sufficient to establish probable cause for the arrest. The Magistrate Judge further found that the HGN test provided "more than adequate evidence" to establish probable cause.

After the close of evidence, the Magistrate Judge found Defendant guilty of the DUI offense and the lane violation offense. The Magistrate Judge administratively closed the DWI citation because the regulation at issue provides two ways to prove one offense.[1] When rendering his judgment, the Magistrate Judge made the following statement:

> the Court finds beyond a reasonable doubt, that at the time the police officers observed you on the Parkway you were under the influence of alcohol to a degree that rendered you incapable of safe operation of the vehicle. The driving conduct, combined with the evidence of the horizontal gaze nystagmus test, would in the Court's view, be sufficient to establish that finding. But on top of that, the breath alcohol test, the Intoximeter test, demonstrated that 90 minutes to two hours later the defendant's blood alcohol level was still at a level that showed intoxication. And the inference that the Court draws from the two breath tests is that the defendant's breath alcohol was going down from a higher level, and that the level had been substantially higher at the time that the police officer stopped the defendant.

---

[1] Defendant's brief states that the Magistrate Judge found him not guilty on the DWI offense, but that statement is inaccurate.

(Trial Tr. at 74.)

On March 30, 2017, Defendant filed a Notice of Appeal of Magistrate Judge's Ruling pursuant to Federal Rule of Criminal Procedure 58(g)(2). Defendant appeals only the DUI conviction, not the lane violation conviction.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Criminal Procedure 58(g)(2)(D), "[a]n appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial *de novo*; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005) (en banc). Therefore, the trial court's findings of fact are reviewed for clear error, and issues of law are reviewed *de novo*. *Id.*

When reviewing for clear error, the facts should be viewed in a light most favorable to the government. *United States v. Pasquantino*, 336 F.3d 321, 332 (4th Cir. 2003) *aff'd*, 554 U.S. 349 (2005). Evidence is sufficient when "a reasonable finder of fact could accept [the evidence] as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *See id.* Thus, the relevant inquiry is not whether the reviewing court is convinced of guilt beyond a reasonable doubt, but rather, "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (quoting *United States v. Powell*, 469 U.S. 57, 67 (1984)). The defendant bears a heavy burden in challenging the sufficiency of evidence, and reversal is reserved for rare instances "where the prosecution's failure is clear." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).

**B. Analysis**

The Court affirms the Magistrate Judge's decision and upholds Defendant's DUI conviction because there was sufficient evidence to support a reasonable fact-finder's conclusion of Defendant's guilt.

To find Defendant guilty for the DUI violation, the Government had to prove beyond a reasonable doubt that (1) Defendant was operating or in actual physical control of a motor vehicle, (2) under the influence of alcohol, and (3) "to a degree that rendered [Defendant] incapable of safe operation." *See* 36 C.F.R. § 4.32(a)(1); *see also United States v. Davis*, 261 F. Supp. 2d 343, 347 (D. Md. 2003). Defendant does not dispute the sufficiency of evidence to support the first element; Defendant argues that the Government failed to provide sufficient evidence to prove that Defendant was under the influence of alcohol to a degree that rendered him incapable of safely operating the Vehicle. In doing so, Defendant essentially contends that the Magistrate Judge erred for four reasons.

Defendant's first contention is that the evidence did not "establish any meaningful nexus between alcohol consumption and weaving between lanes when looking at the totality of the evidence." However, rather than considering the totality of the evidence, Defendant's first argument rests narrowly upon Ms. Tsoi's testimony suggesting that the reason Defendant may have failed to stay in one lane is attributable to him looking down as his GPS for directions. The Court finds that a reasonable fact-finder could have credited testimony and evidence that contradicted this suggestion for at least three reasons. The first reason is that Ms. Tsoi stated she did not notice any swerving or lane violations, and her testimony contradicted Officer Ochocki's account of witnessing seven lane violations. The second reason is that even if a rational fact-finder were to attribute a few lane violations to Defendant looking at his GPS, a rational fact-

finder could determine that not all seven lane violations were attributable to looking at GPS. The

third reason is that the Government also offered evidence of Defendant's glassy eyes, the HGN

test results, and the Intoximeter test results. For these reasons, the Government offered sufficient

evidence for a reasonable fact-finder to link alcohol to Defendant's ability to safely operate the

Vehicle.

Defendant's second contention is that the Magistrate Judge erred because his judgment

relied upon the HGN test results. However, the Magistrate Judge did not solely rely upon the

HGN test to find Defendant guilty. Rather, the Magistrate Judge stated that Defendant's "driving

conduct, combined with the evidence of the [HGN] test, would . . . be sufficient to establish" a

finding of guilty. Defendant relies on *United States v. Horn*, 185 F. Supp. 2d 530 (D. Md. 2002),

to support the proposition that HGN tests are unreliable. In the context of a motion *in limine*, the

*Horn* court held that an HGN test "may be admitted into evidence in a DWI/DUI case only as

circumstantial evidence of intoxication or impairment but not as direct evidence of specific

BAC." *Id.* at 560–61. The *Horn* court also stated that:

> [t]here is a well-recognized, but my no means exclusive, causal connection
> between the ingestion of alcohol and the detectable presence of exaggerated
> horizontal gaze nystagmus in a person's eyes, which may be judicially noticed by
> the Court pursuant to Fed. R. Evid. 201, proved by expert testimony, or otherwise
> . . . [a] police officer trained and qualified to perform standard field sobriety tests
> may testify with respect to his or her observations of a subject's performance of
> these tests, if properly administered, to include the observation of nystagmus, and
> these observations are admissible as circumstantial evidence that he defendant
> was driving while intoxicated or under the influence.

*Id.* at 533. Here, the Magistrate Judge did not err in partially relying on the HGN test. Viewing

the evidence in a light most favorable to the Government, the Magistrate Judge had before him

other supporting evidence, including Officer Ochocki's experience administering field sobriety

tests and testimony concerning questions that Officer Ochocki asked to determine if Defendant

had any medical conditions which may affect the sobriety tests. Moreover, the Government did not purport to offer Officer Ochocki's testimony as evidence of any particular BAC level.

Defendant's third contention is that the Magistrate Judge erred by relying upon the RBT test in making his finding of guilt. As a factual matter, this contention appears to be misplaced. The Magistrate Judge gave the RBT test "scant weight" during the motion to suppress hearing. Then, during the bench trial, the Magistrate Judge relied on Defendant's driving conduct, the HGN test results, and the Intoximeter test results. The Court interprets the Magistrate Judge's remarks concerning "the breath alcohol test" and "the two breath tests" the same way the Government interprets those remarks. It appears that the Magistrate Judge was referring to the two Intoximeter breath tests, not the RBT breath test. Furthermore, regardless of whether the Magistrate Judge referred to the RBT test, there was more than sufficient evidence for a reasonable fact-finder's conclusion of Defendant's guilt without the RBT test.

Defendant's fourth contention is that there is "no statutory authority" for the Magistrate Judge to have drawn an inference about Defendant's BAC level at 4:30 a.m. based upon the Intoximeter test results at 6:13 a.m. This argument is misplaced for three reasons. The first reason is that no statutory authority *prohibits* a fact-finder from drawing a reasonable inference, and in the context of analyzing whether evidence was sufficient to convict a defendant of wire fraud, the Fourth Circuit permitted a fact-finder to draw a reasonable inference supported by the evidence. *See Pasquantino*, 336 F.3d at 336. The second reason is that the Intoximeter test results were not the only evidence of Defendant's intoxication; Officer Ochocki observed Defendant's driving and smelled the odor of alcohol. The third reason that the Magistrate Judge did not err is that the Supreme Court has recognized that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the

system," and "as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated." *Missouri v. McNeely*, 133 S. Ct. 1552, 1560 (2013) (citation and internal quotation marks omitted). Thus, the Magistrate Judge did not err in drawing a reasonable inference that Defendant's BAC level would have been higher, considering that traffic stop occurred 1 hour and 43 minutes prior to the Intoximeter test. Even if the Magistrate Judge had erred in drawing the inference without sufficient evidence in this case record to support it, one of the two Intoximeter tests revealed that Defendant's BAC level was .081 grams per 210 liters of breath, which is above the applicable legal limit of .08. *See* 36 C.F.R. § 4.23(a)(2).

In sum, the Court finds that the Magistrate Judge did not err for any of the reasons asserted by Defendant on appeal.

## III. CONCLUSION

The Court affirms the Magistrate Judge's decision and upholds Defendant's DUI conviction because there was sufficient evidence to support a reasonable fact-finder's conclusion of Defendant's guilt.

Accordingly, it is hereby

**ORDERED** that Defendant Henri Saint-Surin's judgment of conviction for driving under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(1) is **AFFIRMED**.

**IT IS SO ORDERED**.

ENTERED this ___22nd___ day of June, 2017.

Alexandria, Virginia

_____/s/_____
Gerald Bruce Lee
United States District Judge